UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

LISA RILEY, LISA MARIE CATALANO,
SANDY PANARELLO and
AMANDA MEDINA,
          Plaintiffs

v.

GENERAL EMPLOYMENT
ENTERPRISES, TRIAD PERSONNEL
SERVICES INC, GREGRORY CHRISOS,
HERBERT IMHOFF and KIM CULLEN,
          Defendants

Civil Action No. 04-12318-RWZ

---

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A PROTECTIVE ORDER**

On this date, Plaintiffs in the above-captioned case filed a Motion for a Protective Order to prevent the disclosure, through discovery, of information related to the following:

1) trade secret and other confidential research, development and commercial information related to Plaintiffs Riley, Catalano and Panarello's new business, SmarteStaff;

2) medical, including psychiatric, records of Plaintiff Amanda Medina;

3) medical, including psychiatric, records of Plaintiff Lisa Riley.

In support of their Motion, Plaintiffs respectfully submit the following arguments.

          **I.**    **Background**

On August 19, 2004, Plaintiffs commenced this action against General Employment Enterprises ("GEE"), Triad Personnel Services, Inc. ("Triad"), Gregory Chrisos ("Chrisos"), Herbert Imhoff ("Imhoff") and Kim Cullen ("Cullen") (collectively, "Defendants") in Superior Court, Middlesex County. Plaintiffs' complaint alleged claims, under state law, of discrimination on the basis of sex, sexual harassment, retaliation and promissory estoppel.

On November 1, 2004, Defendants removed this action to federal court. Plaintiffs moved to remand the case to Massachusetts Superior Court and, on August 17, 2004, this Court denied Plaintiff's motion. At the joint scheduling conference on September 7, 2005, the Court instructed the parties to conduct the limited discovery necessary to mediate the case by the end of the year. Pursuant to that order, the parties produced initial disclosures, propounded written discovery requests and noticed depositions.

## II.　Argument

Through the discovery process, Defendants seek – through interrogatories, document requests and, it is assumed, future depositions – information intended to annoy, embarrass and/or oppress Plaintiffs in retaliation for bringing claims under the civil rights statutes of the Commonwealth of Massachusetts and the common law. For the following reasons, the Court should protect Plaintiffs from Defendants' attempted unwarranted intrusions on the privacy and confidential business interests of the individual plaintiffs.

### A. Defendants Should Be Prevented From Seeking Information Related To Plaintiffs' Creation Of A New Competing Business, SmarteStaff

On or about July 12, 2003, the Plaintiffs complained to GEE about a Vice President (Defendant Chrisos) who had serially made sexual advances toward three of the plaintiffs and toward several other women employees. See Complaint ¶¶ 26, 30, 39-43, 83, 89-93 and 100. GEE then conducted an investigation into the plaintiffs' complaints which was intimidating and threatening to the employees. Complaint ¶ 105. Plaintiffs were then subjected to an unprecedented retaliatory attack on their tangible and intangible economic opportunities within the company. Complaint ¶ 106A-V. No reasonable woman in the Plaintiffs' shoes would continue to remain employed for GEE in the wake of such discrimination and retaliation. See Id.

at W-Y. The Plaintiffs Lisa Riley and Sandy Panarello began planning a business offering human resources services to client companies.

Plaintiffs' request this Court to issue an order, pursuant to Fed. Rule Civ. Pro. 26(c)(7), protecting them from Defendants' attempts to discover information related to Riley, Catalano and Panarello's efforts to start their own business, a human resources services firm called SmarteStaff, which GEE perceives as a competitor. In the wake of Plaintiff Panarello's termination from GEE and the intolerable working conditions experienced by Plaintiffs Riley and Medina, Plaintiffs undertook to begin developing a business plan to deal with the crisis. Plaintiffs are not subject to any non-compete agreement with GEE or TRIAD, and the corporate Defendants never required Plaintiffs to sign any such agreement as a term or condition of their employment. Defendants' efforts are a transparent attempt to gain the right to discovery a competitor's business plan under the guise of ordinary discovery. See Lifescan, Inc. et al. v. O'Connell, et al., No. 12-316-05, slip op. at 3 (Mass. Dist. Ct. October 5, 2005) (Attached as Exhibit A).

### 1. Defendants' prior conduct in Illinois federal court is evidence of their intent to use the discovery process to gain access to Plaintiff's confidential business research and development.

On May 19, 2004, less than one year after Plaintiffs complained to the defendant corporations of sexual harassment and discrimination, Defendants GEE and TRIAD filed a complaint against Plaintiffs Riley and Panarello in United States District Court for the Northern District of Illinois alleging Plaintiffs breached their duty of loyalty to their former employer and their employment agreements, tortiously interfered with the Defendant corporations' prospective business advantage, misappropriated trade secrets, and engaged in civil conspiracy. Complaint of General Employment Enterprises and TRIAD ("Illinois Complaint") (Attached as Exh. B) at 10.

The complaint sought a preliminary and permanent injunction against Riley and Panarello, damages in excess of $100,000, punitive damages, disgorgement of the salaries Riley and Panarello earned while employed by GEE and TRIAD, and an award of attorneys' fees and costs. Illinois Complaint at 11. Defendants' withdrew their complaint before serving it on Plaintiffs Riley and Panarello. Before the complaint was withdrawn, however, Plaintiffs were contacted by the Illinois firm of Figliulo & Silverman, notifying them of the suit against them and offering legal representation. Affidavit of Elizabeth A. Rodgers (attached as Exhibit C) ¶¶ 4-5. In a conversation with Plaintiffs' counsel, Elizabeth Rodgers, representatives of Figliulo & Silverman revealed that they had repeatedly represented GEE and TRIAD in other matters. Rodgers Aff. ¶ 6. After Riley and Panarello denied Figliulo & Sivlerman's offer of representation, Defendants GEE and TRIAD withdrew the federal complaint. Rodgers Aff. ¶¶ 7-8.

Defendants' prior, meritless claims of business misconduct were an effort to intimidate and threaten the Plaintiffs from using their award-winning energy and effectiveness in a new business services model. The Illinois Complaint was a transparent attempt to harass, retaliate against and drain the resources of Plaintiffs through frivolous and dubious litigation. Furthermore, Defendants' history of seeking to impinge on Plaintiffs' rights to earn a livelihood and interference with their duty to mitigate their damages sheds light on Defendants' current motivation for seeking information related to Plaintiffs' subsequent business efforts. See Lifescan v. O'Connell, slip op. at 3 ("the Court has to be alert to the fact that there may be some unspoken motives to bring litigation against a competitor. In reality, a [former employer] may be attempting to discover the technology of new competition.") (Exh. A). Defendants' efforts to discover information about the Plaintiff's new business venture is unrelated to the claims or

defenses of this litigation and is an attempt to interfere with the rights of a perceived business competitor. Plaintiffs have already suffered harassment, discrimination, retaliation, deception and, ultimately, termination, on the part of Defendants. By issuing the requested protective order, this Court will prevent Defendants' further oppression of Plaintiffs through interference with their attempts to earn a livelihood subsequent to their employment with the defendant corporations. See id. at 3 and 5 (granting the new start-up's employees' motion for a protective order to prevent their former employer from discovering private information about their new, potentially competing business venture.)

2. **Information concerning Plaintiffs' efforts to form their own business is unrelated to the claims or defenses in this litigation and unlikely to lead to the discovery of relevant evidence.**

Defendants' effort to learn information, through the discovery process, about Plaintiffs' new business is unjustified. As stated above, none of the Plaintiffs in this action was ever asked to sign a non-compete agreement with defendant corporations and, therefore, have every right to undertake to establish a new business and these efforts are not subject to the after-acquired-evidence rule. Plaintiff Panarello's efforts to create a new business is unrelated to her claims of discrimination and promissory estoppel as Panarello does not seek damages beyond the date of her termination from GEE. Therefore, Panarello's efforts to secure employment subsequent to her termination are not relevant to her claim for damages. Plaintiffs Riley and Catalano can offer other evidence, including job-search logs, federal W2 forms and/or testimony of their efforts to find re-employment and mitigate their damages. Thus, information related to Plaintiff's efforts to start a new business are unnecessary to proving the essential elements of their claims and revealing such evidence to the Defendants will allow the defendant corporations, potential direct competitors with Plaintiffs' new business, unfettered access to Plaintiffs' business plan, customer

5

lists, technology and trade secrets. For these reasons, Plaintiffs request that this court issue a Protective Order preventing disclosure of information related to Plaintiffs' business venture, SmarteStaff.

**B. Defendants Should Be Barred From Obtaining Information Related To Medina's Medical and Mental Health Treatment Prior To Being Sexually Harassed**

Plaintiff Medina requests this Court issue an order, pursuant to Fed. Rule Civ. Pro. 26(c)(7), protecting her from Defendants' attempts to discover information related to her medical and psychiatric records. In her complaint, Plaintiff Medina alleges that she has suffered only emotional distress, not psychic injury or psychic illness. Medina has not made her emotional condition an element of her case, and as a result, her medical records, privileged and protected under Mass. G. L. c. 233 § 20B, are not discoverable. Sabree v. United Brotherhood of Carpenters & Joiners, Local No. 33, 126 F.R.D. 422, 426 (D. Mass. 1989). Furthermore, because Medina does not plan to produce either her therapist's testimony or records into evidence, she has not waived the privilege afforded her records under Massachusetts law. Robart v. Alamon Rent-A-Car, 19 Mass. L. Rep. 154, 2005 Mass. Super. LEXIS 122, *7, *10-11. As stated in Stonehill College v. Mass. Comm'n Against Discrimination, 441 Mass. 549, 576 (2004), while evidence in the form of expert or psychiatrist testimony is beneficial to proving one's claim for emotional distress damages, it is not necessary to obtain such an award. Medina may prove her claim of emotional distress through other evidence, including the nature, severity, and character of the harm; the duration of her suffering and her attempts to mitigate, through professional assistance or medication, the harm. Stonehill, 441 Mass. at 576.

Defendants have asked Medina to "[i]dentify each and every physician, psychiatrist, psychologist, social worker or other healthcare provider whom Plaintiff has visited, consulted, or

received treatment from since January 1, 2000," and for each such person to state the "condition for which treatment was sought; the diagnosis that was rendered [and] the nature of the treatment rendered." Defendants further request that Medina provide defense counsel with a fully-executed Medical Records Release and Mental Health Records Release. Defendants' requests are over-broad, invasive and seek to violate the statutorily-protected privilege that exists in Medina's medical and mental health records. A plaintiff in an employment discrimination case does not lose her right to the protections of the patient-psychotherapist privilege simply by asserting a claim for emotional distress damages; the privilege remains unless and until the plaintiff herself seeks to use the privileged communication as evidence. Vanderbuilt v. Town of Chilmark, 174 F.R.D. 225, 228 (D. Mass. 1997). An evisceration of this privilege by courts would have a chilling effect on patients seeking psychiatric treatment, for the privilege promotes the ability of patients to speak freely in therapy and encourages those in need to seek assistance from mental health professionals. Id. at 227[1].

Because Medina's particularly vulnerable emotional state at the time Chrisos sexually harassed her is relevant to her claims, Medina is willing to provide the Defendants with the dates of hospitalization for reasons related to her psychiatric health and the dates on which, prior to Chrisos's harassment, she had seen a therapist. By providing this information, Medina does not waive the privilege attached to her communications with medical and mental health providers. See id. at 229. Although the fact that a privileged communication has taken place is relevant to Medina's claims, the content of that communication is not at issue in this litigation. Id. (seeking

---

[1] "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. . . . If the purpose of the privilege is to be served, the participants in the confidential conversation must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 227-228 (D. Mass. 1997), citing Upjohn Co. v. United States, 449 U.S. 383, 393 (1981) (internal quotations omitted).

emotional distress damages is analogous to seeking attorney's fees). For these reasons, Plaintiff Medina requests this Court issue an order protecting her from Defendants' efforts to obtain information related to her privileged medical and mental health records.

### C. Defendants Should Be Barred From Obtaining Information Related To Riley's Privileged Medical and Mental Health Treatment

Plaintiff Riley requests this Court issue an order, pursuant to Fed. Rule Civ. Pro. 26(c)(7), protecting her from Defendants' attempts to discover information related to her medical and psychiatric records. In her complaint, Plaintiff Riley alleges that she has suffered only "garden-variety" emotional distress, not psychic injury or psychic illness. Riley has not made her emotional condition an element of her case, and as a result, her medical records, privileged and protected under Mass. G. L. c. 233 § 20B, are not discoverable. Sabree v. United Brotherhood of Carpenters & Joiners, Local No. 33, 126 F.R.D. 422, 426 (D. Mass. 1989). Furthermore, because Riley does not plan to produce either her therapist's testimony or records into evidence, she has not waived the privilege afforded her records under Massachusetts law. Robart v. Alamon Rent-A-Car, 19 Mass. L. Rep. 154, 2005 Mass. Super. LEXIS 122, *7, *10-11. As stated in Stonehill College v. Mass. Comm'n Against Discrimination, 441 Mass. 549, 576 (2004), while evidence in the form of expert or psychiatrist testimony is beneficial to proving one's claim for emotional distress damages, it is not necessary to obtain such an award. Riley may prove her claim of emotional distress through other evidence, including the nature, severity, and character of the harm; the duration of her suffering and her attempts to mitigate, through professional assistance or medication, the harm. Stonehill, 441 Mass. at 576.

Defendants have asked Riley to "[i]dentify each and every physician, psychiatrist, psychologist, social worker or other healthcare provider whom Plaintiff has visited, consulted, or

received treatment from since January 1, 2000," and for each such person to state the "condition for which treatment was sought; the diagnosis that was rendered [and] the nature of the treatment rendered." Defendants further request that Riley provide defense counsel with a fully-executed Medical Records Release and Mental Health Records Release. Defendants' requests are over-broad, invasive and seek to violate the statutorily-protected privilege that exists in Riley's medical and mental health records. A plaintiff in an employment discrimination case does not lose her right to the protections of the patient-psychotherapist privilege simply by asserting a claim for emotional distress damages; the privilege remains unless and until the plaintiff herself seeks to use the privileged communication as evidence. Vanderbuilt v. Town of Chilmark, 174 F.R.D. 225, 228 (D. Mass. 1997). An evisceration of this privilege by courts would have a chilling effect on patients seeking psychiatric treatment, for the privilege promotes the ability of patients to speak freely in therapy and encourages those in need to seek assistance from mental health professionals. Id. at 227.

Because Riley's particularly vulnerable state, and Chrisos's knowledge of Riley's unique vulnerability, is relevant to her claims of sexual harassment, Riley is willing to provide Defendants with the dates on which she met with her therapist, but requests that this court protect her from disclosing the content of those meetings.[2] Plaintiff will be able to show through other, non-privileged evidence that, at the time she was harassed by Chrisos and during the entirety of her employment with the defendant corporations, her minor son suffered from severe, on-going medical issues that required extensive treatment; that at the time Chrisos first began sexually harassing Riley, Riley's son experience an acute episode related to his illness; and that Chrisos

---

[2] From approximately 1995 through 2004, Riley's minor son was in the care, at different times, of approximately six mental health professionals. On occasion, Riley attended therapy sessions with her minor son, at which the only issues discussed were those relating to her son's illness. From approximately 1997 through the present, Riley has attended group therapy twice a month in a group for single mothers of children with psychological and developmental difficulties.

9

was aware of Riley's son's medical condition. By providing this information, Riley does not waive the privilege attached to her communications with medical and mental health providers. See id. at 229. Although the fact that a privileged communication has taken place is relevant to Riley's claims, the content of that communication is not at issue in this litigation. Id. For these reasons, Plaintiff Riley requests this Court issue an order protecting her from Defendants' efforts to obtain information related to her privileged medical and mental health records.

### III.  Conclusion

For the reasons stated above, Plaintiffs request that this Court GRANT their Motion for a Protective Order to prevent the disclosure, through discovery, of information related to the following:

1)  trade secret and other confidential research, development and commercial information related to Plaintiffs Riley, Catalano and Panarello's new business, SmarteStaff;

2)  medical, including psychiatric, records of Plaintiff Amanda Medina;

3)  medical, including psychiatric, records of Plaintiff Lisa Riley.

Respectfully submitted by
Plaintiffs' counsel,

*/s/ Elizabeth A. Rodgers*
Elizabeth A. Rodgers, BBO#424360
Sara Smolik, BBO#661341
Rodgers, Powers & Schwartz LLP
18 Tremont Street, Suite 500
Boston, MA 02108
617-742-7010

Date: October 25, 2005

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 10/25/2005.

*/s/*