EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**

**SUPERIOR COURT**
**CIVIL ACTION**
**NO. 2004-02043-A**

## LIFESCAN, INC., DIABETES DIAGNOSTICS, INC., and INVERNESS MEDICAL LTD.

### vs.

## DANIEL F. O'CONNELL and AGAMATRIX, INC.

### MEMORANDUM AND ORDER ON VARIOUS DISCOVERY MOTIONS AND ON THE EXISTING TEMPORARY RESTRAINING ORDER

### Introduction

This civil action was commenced on May 14, 2004 by the plaintiff corporations against

the defendant corporation and Daniel F. O'Connell.  The plaintiff corporations, Lifescan, Inc.,

Diabetes Diagnostics, Inc., and Inverness Medical Ltd., are all owned and controlled by Johnson

& Johnson Companies.[1]  The defendant corporation, AgaMatrix, Inc., is a start-up company.

Daniel O'Connell was an employee of the plaintiff, Lifescan, Inc.  On May 3, 2004, Mr.

O'Connell left Lifescan, Inc., and joined the defendant corporation, AgaMatrix, Inc.  The

plaintiffs commenced this civil action on May 14, 2004.  The plaintiffs obtained a very broad

temporary restraining order on May 14, 2004 regarding the plaintiffs' alleged trade secrets and

other proprietary and confidential information.  It further ordered that Mr. O'Connell was

prohibited from working for or providing any services to defendant AgaMatrix.  There has never

been a hearing on this preliminary restraining order but said temporary restraining order has had

multiple extensions.

---

[1]Johnson & Johnson is a New Jersey multi-national manufacturer of pharmaceutical,
diagnostic, therapeutic, surgical, and biotechnology products.

## Discussion

This civil action involves blood glucose monitoring technology. Glucose monitoring is an essential component of a diabetic person's life. In general, a diabetic patient measures blood glucose levels several times a day to monitor and control blood glucose levels. Failure to test blood glucose levels accurately and on a regular basis may result in serious diabetes-related complications, including cardiovascular disease, kidney disease, nerve damage or blindness. This lawsuit concerns various glucose meter designs, technology, and alleged proprietary information. It was alleged in the plaintiffs' original complaint that Mr. O'Connell took the technology, trade secrets, and proprietary information and made use of it at AgaMatrix. It is stated in Mr. O'Connell's Second Affidavit, dated December 21, 2004, that his role at Lifescan was not a critical role in the design, manufacture, development, and supply of the plaintiff's (Lifescan) blood glucose monitoring products. Mr. O'Connell's role was confined to transferring already developed products into production, and was specifically focused on manufacturing support and manufacturing compliance with FDA and ISO requirements. Basically, all his duties were manufacturing related.

At the hearing on these motions, defendants' counsel indicated that in the seventeen months of intense discovery in this case, there has been no evidence uncovered or discovered by the plaintiffs' attorney that indicates any impropriety on the part of Mr. O'Connell. Accordingly, the defendants claim that the plaintiffs' counsel is attempting to shift its discovery "attack" to another target, namely to allegedly obtain discovery in the case from Mr. John Alberico and Mr. Thomas McDonald and their company, Medical Devices, Inc., regarding AgaMatrix's technology and business plans. The plaintiffs claim that the reason for the change in attack is so-called new evidence, only recently discovered. The newly discovered evidence is Mr. Alberico's

2

business connection to AgaMatrix (which the plaintiffs have known about since 2003).

In cases such as this one, the Court has to be alert to the fact that there may be some unspoken motives to bring litigation against a competitor. In reality, a plaintiff may be attempting to discover the technology of new competition. The plaintiff may also want to force a new company to agree to the plaintiff's terms on a proposed buyout. The traditional rules to allow amendments liberally under Mass. R. Civ. P. 15(a) may not apply in this case.[2] The Court, by issuing discovery orders in a case such as this one, may, in effect, allow a competitor the right to discover a competitor's technology, under the guise of a claim of an improper use of trade secrets. To allow such an abuse would be just as improper as to allow one to steal and use another's trade secrets. Accordingly, the court must tread cautiously in this area.

Since the plaintiffs' have not been successful in discovering any impropriety on the part of Mr. O'Connell, they wish to amend their claim based "on information and belief" and on "newly discovered evidence" (as described above). The plaintiff corporations are part of the international Johnson & Johnson companies. The defendant, AgaMatrix, possesses technology that the plaintiffs wish to obtain now or in the recent past. The plaintiffs held unfruitful discussions with the defendant regarding potential business, but without success. This litigation, which has lasted for the past seventeen months, in all likelihood has been financially devastating to a new start-up company such as AgaMatrix. Unfortunately, the world of business has practices that are not necessarily consistent with the law and basic human decency.

This Court does not believe, in light of all the circumstances, that the further request for

---

[2] "The decision whether to grant a motion to amend is within the discretion of the judge, but leave should be granted unless there are good reasons for denying the motion." *Mathis v. Mass Electric Co.*, 409 Mass. 256, 264 (1991); *Goulet v. Whitin Machine Works, Inc.*, 399 Mass. 547, 549 (1987).

discovery is warranted or appropriate. This case was commenced by the plaintiffs. The sole

claim was that Mr. O'Connell was breaching his written contracts by working for a competitor,

AgaMatrix, within one year of having worked at LifeSpan as well as violating the Secrecy

Agreement by revealing trade secrets and other confidential information to AgaMatrix,

Lifespan's competitor. During the pendency of this case and over the course of the past 17

months, the plaintiffs have not been able to find any violation by Mr. O'Connell. Likewise, it

has been substantially over a year since Mr. O'Connell left the employ of Lifespan, and hence

the contractual restriction that he may not work for a competitor, AgaMatrix, is no longer in

effect.

The test for the issuance and maintenance of a temporary or preliminary restraining order

is set out in *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 616-618 (1980) and in

*Commonwealth v. Mass. CRINC*, 392 Mass. 79, 87-88 (1984): "An injunction may issue properly

only if the judge concludes that the risk of irreparable harm to a plaintiff, in light of his chances

of success on his claim, outweighs the defendant's probable harm and likelihood of prevailing on

the merits of the case." Upon a complete review of this file and the facts as they appear at the

present time after significant discovery has been conducted, this Court believes and finds that the

plaintiffs have not and will not suffer any significant harm and the plaintiffs have very little, if

any, chance to win this case.

## ORDER

Therefore, the Court enters the following orders:

4

1.   The Court, on its own motion, orders the Temporary Restraining Order issued on May 14, 2004, and extended many times, **<u>VACATED</u>** in its entirety as to both the defendant, Daniel F. O'Connell, and the defendant, AgaMatrix, Inc.

2.   Plaintiffs' motion to amend the verified complaint is **<u>DENIED</u>**.

3.   Motion of non-parties for a protective order by Mr. Albenico and Mr. MacDonald pursuant to Mass. R. Civ. P. 26(c). Both a party and "a person from whom discovery is sought" may seek a protective order. Motion is **<u>ALLOWED</u>**.

4.   Plaintiffs' motion to compel discovery from the defendant AgaMatrix, Inc. (filed on 6/21/05) is **<u>DENIED</u>**.

5.   Plaintiffs' motion for issuance of commission to take out-of-state depositions. No action taken in light of the Court's action on the motion for a protective order by two non-party deponents.


                                        Thomas E. Connolly
                                        Justice of the Superior Court

DATED: *October 5, 2005*      *Thomas E. Connolly*
                                        *(at Edgartown)*

EXHIBIT B

MAY-29-2004 03:32 AM                                                                P.03

05/28/2004 14:05 FAX 3122514610          FIGLIULO & SILVERMAN                        ☒002

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DOCKETED

MAY 19 2004

GENERAL EMPLOYMENT
ENTERPRISES, INC., and TRIAD
PERSONNEL SERVICES, INC., d/b/a
GENERATION TECHNOLOGIES,

        Plaintiffs,

v.

LISA RILEY and SANDRA PANARELLO,

        Defendants.

JUDGE JOAN H. LEFKOW

No. 04C 3486

MAGISTRATE JUDGE LEVIN

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, General Employment Enterprises, Inc. ("GEE"), and Triad Personnel

Services, Inc., d/b/a Generation Technologies ("Triad") (collectively, "plaintiffs"), state

as follows for their Complaint against defendants, Lisa Riley ("Riley") and Sandra

Panarello ("Panarello") (collectively, "defendants"):

## NATURE OF THE ACTION

1.      This action arises out of defendants' coordinated scheme to irreparably

damage and undermine the business of their former employers, Triad and GEE. During

the course of their employment with plaintiffs, defendants diverted substantial time and

effort from their employment duties to create a competing company. In an effort to staff

this competing company, they lured and/or attempted to lure other employees away from

GEE and Triad and damaged and/or attempted to damage plaintiffs' relationships with

the other employees. Upon information and belief, defendants, during their employment,

RIL - 0250

also used corporate assets to establish and set up their competing business, diverted business opportunities from plaintiffs, and misappropriated customer lists and other confidential and proprietary information.

## THE PARTIES

2.     GEE is a corporation organized and existing under the laws of Illinois, with its corporate headquarters in Oakbrook Terrace, Illinois.  GEE is generally in the business of providing recruiting services for employers.

3.     Triad, which does business in some geographical areas as Gen Tech, is a wholly-owned subsidiary of GEE, also incorporated and existing under the laws of the State of Illinois, with its corporate headquarters in Oakbrook Terrace, Illinois.  Triad is generally in the business of providing staffing services for employers.

4.     Riley is a citizen of the State of Massachusetts residing at 49 Buffum Street, Salem, Massachusetts.

5.     Panarello is a citizen of the State of Florida residing at 18838 Duquesne Drive, Tampa, Florida.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332 in that there is complete diversity between the plaintiffs and the defendants and the amount in controversy exceeds $75,000, exclusive of interest.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events and omissions giving rise to the claim occurred here.

RIL - 0251

MAY-29-2004 03:54 AM                                                                P.02
05/28/2004 14:06 FAX 3122514610          FIGLIULO & SILVERMAN                    ☑004

## COUNT I

### BREACH OF DUTY OF LOYALTY
### (AGAINST RILEY AND PANARELLO)

8.    Triad employed Riley during the period from March 6, 1995 to January 27, 2004. During the period from November 1, 1997 until the termination of her employment, Riley was the Branch Manager of the Gen Tech Branch Office in Wakefield, Massachusetts.

9.    GEE employed Panarello during the period from July 24, 1999 to July 14, 2003. During the period from February 14, 2000 until the termination of her employment, Panarello was the Branch Manager of GEE's Branch Office in Tampa, Florida.

10.    Based upon their positions as employees of the plaintiffs, and particularly as managerial employees, defendants owed plaintiffs a duty of loyalty.

11.    During the term of their employment, defendants breached that duty of loyalty by, among other things:

   (a)    establishing and operating a competing business;

   (b)    upon information and belief, diverting time, efforts and attention from their employment duties in order to establish and operate a competing company;

05/28/2004 14:06 FAX 3122514610          FIGLIULO & SILVERMAN                    ☑005

   (f)    upon information and belief, misappropriating plaintiffs' customer lists and other trade secrets for use in their competing business.

12.    As a result of plaintiffs' aforementioned breach of their duties of loyalty, defendants have suffered, and will continue to suffer, damages in excess of $100,000. RIL - 0252

13.    Upon information and belief, although defendants are no longer employed

defendants have suffered, and will continue to suffer, damages in excess of $100,000.

13.   Upon information and belief, although defendants are no longer employed by the plaintiffs, defendants continue to use materials obtained in breach of their duty of loyalty. In this regard, plaintiffs have no adequate remedy at law. Money damages alone will not, and cannot, compensate plaintiffs for the loss of goodwill and business opportunities that they have suffered and will continue to suffer as a result of defendants' actions. Those actions have and will in the future continue to harm plaintiffs' business relationships.

14.   Should the Court grant interlocutory injunctive relief, the burden on the defendants to refrain from using information and data obtained in violation of their duty of loyalty will be slight compared to the injury to plaintiffs if relief is not granted. No injury will result to defendants from an order requiring that they conform their actions to the law.

15.   The granting of an injunction will not disserve the public interest. Indeed, the granting of injunctive relief here will further the public interest.

## COUNT II

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
### (AGAINST RILEY AND PANARELLO)

16.   Plaintiffs repeat and reallege, as and for paragraph 13 of Count II, paragraphs 8 and 9 of Count I.

17.   Defendants had a reasonable expectancy of:

4

MAY-29-2004 03:34 AM                                                                 P.03
05/28/2004 14:07 FAX 3122514610          FIGLIULO & SILVERMAN                    ☒006

(a)    continuing their business relationships with certain of their existing employees;

(b)    continuing their business relationships with certain of their existing customers; and/or

(c)    obtaining business from certain prospective customers.

18.    Defendants were aware of plaintiffs' reasonable expectancy in continuing and/or entering into these relationships.

19.    Upon information and belief, defendants intentionally and unjustifiably interfered with, and continue to interfere with, plaintiffs' reasonable expectancy of continuing and/or entering into valid business relationships with certain employees and customers and prospective customers.

20.    As a result of defendants' conduct, plaintiffs have suffered, and will continue to suffer, damages in excess of $100,000.

21.    Plaintiffs have no adequate remedy at law. Money damages alone will not, and cannot, compensate plaintiffs for the loss of goodwill and business opportunities that they have suffered and will continue to suffer as a result of defendants' actions. Those actions have and will in the future continue to harm plaintiffs' business relationships.

22.    Should the Court grant interlocutory injunctive relief, the burden on the defendants to refrain from raiding plaintiffs' employees and contacting defendants' existing and prospective customers will be slight compared to the injury to plaintiffs if relief is not granted. No injury will result to defendants from an order requiring that they conform their actions to the law.

RIL - 0254

MAY-29-2004 03:35 AM                                                    P.04
05/29/2004 14:06 FAX 3122514610        FIGLIULO & SILVERMAN          @005

(f)    upon information and belief, misappropriating plaintiffs' customer lists and other trade secrets for use in their competing business.

12.    As a result of plaintiffs' aforementioned breach of their duties of loyalty, defendants have suffered, and will continue to suffer, damages in excess of $100,000.

13.    Upon information and belief, although defendants are no longer employed by the plaintiffs, defendants continue to use materials obtained in breach of their duty of loyalty. In this regard, plaintiffs have no adequate remedy at law. Money damages alone will not, and cannot, compensate plaintiffs for the loss of goodwill and business opportunities that they have suffered and will continue to suffer as a result of defendants' actions. Those actions have and will in the future continue to harm plaintiffs' business relationships.

14.    Should the Court grant interlocutory injunctive relief, the burden on the defendants to refrain from using information and data obtained in violation of their duty of loyalty will be slight compared to the injury to plaintiffs if relief is not granted. No injury will result to defendants from an order requiring that they conform their actions to the law.

15.    The granting of an injunction will not disserve the public interest. Indeed, the granting of injunctive relief here will further the public interest.

## COUNT II

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE (AGAINST RILEY AND PANARELLO)

16.    Plaintiffs repeat and reallege, as and for paragraph 13 of Count II, paragraphs 8 and 9 of Count I.

17.    Defendants had a reasonable expectancy of:

4

MAY-29-2004 05:55 AM                                                    P.05
08/28/2004 14:07 FAX 3122514610        FIGLIULO & SILVERMAN            ☰007

23.   The granting of an injunction will not disserve the public interest. Indeed, the granting of injunctive relief here will further the public interest.

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE ILLINOIS TRADE SECRETS ACT (AGAINST RILEY AND PANARELLO)

24.   Plaintiff repeats and realleges, as and for paragraph 24 of Count III, paragraphs 8 and 9 of Count I.

25.   Plaintiffs, as part of their regular business practice, maintain client information, including contact details, in a confidential and secure manner. While the nature of such lists may be common knowledge in the industry, the actual content of plaintiffs' lists was kept secret from all competitors and other customers.

26   Defendants, as managerial employees, had access to these lists and other confidential, closely guarded trade secrets.

27   Upon information and belief, defendants have utilized their access to these trade secrets in furtherance of their new business and to the detriment of plaintiffs.

28.   Defendants' use and/or disclosure of plaintiffs' trade secrets was and continues to be without legal right, permission or consent, express or implied.

29.   As a direct and proximate result of defendants' conduct, plaintiffs have suffered, and will continue to suffer, damages in excess of $100,000;

30.   Plaintiffs have no adequate remedy at law. Money damages alone will not, and cannot, compensate plaintiffs for the loss of goodwill and business opportunities that they have suffered and will continue to suffer as a result of defendants' actions.

RIL - 0256

Those actions have and will in the future continue to harm plaintiffs' business relationships.

31.    Should the Court grant interlocutory injunctive relief, the burden on the defendants to refrain from misappropriating plaintiffs' trade secrets and using them in connection with their new business will be slight compared to the injury to plaintiffs if relief is not granted. No injury will result to defendants from an order requiring that they conform their actions to the law.

32.    The granting of an injunction will not disserve the public interest. Indeed, the granting of injunctive relief here will further the public interest.

## COUNT IV

### BREACH OF EMPLOYMENT AGREEMENT
### (AGAINST RILEY)

33.    Plaintiffs, as and for paragraph 33 of Count IV, repeat and reallege paragraphs 8 and 9 of count I.

34.    On January 31, 1997, Riley entered into a valid and binding Employment Agreement (the "Riley Employment Agreement") with Triad. A copy of the Riley Employment Agreement is attached hereto as Exhibit "A."

35.    Triad has complied with the terms and conditions of the Riley Employment Agreement and fully performed its obligations thereunder.

36.    Upon information and belief, Riley has breached and continues to breach the Riley Employment Agreement by, among other things:

          (a)    misappropriating and using for her own financial gain
                 Triad's confidential and/or proprietary information and
                 trade secrets; and/or

7

RIL - 0257

MAY-29-2004 03:40 AM                                                                                            P.02
05/28/2004 14:07 FAX 3122514810            FIGLIULO & SILVERMAN                                          ☒009

(b)    making and using for her own financial gain copies of software and/or data stored on Triad's computers.

37.    As a direct and proximate result of Riley's conduct, Triad has suffered, and will continue to suffer, damages in excess of $100,000.

38.    Triad has no adequate remedy at law. Money damages alone will not, and cannot, compensate Triad for the loss of goodwill and business opportunities that it has suffered and will continue to suffer as a result of Riley's actions. Those actions have and will in the future continue to harm plaintiffs' business relationships.

39.    Should the Court grant interlocutory injunctive relief, the burden on the Riley to refrain from using information and data obtained in violation of the Riley Employment Agreement will be slight compared to the injury to plaintiffs if relief is not granted. No injury will result to Riley from an order requiring that she conform her actions to the law.

40.    The granting of an injunction will not disserve the public interest. Indeed, the granting of injunctive relief here will further the public interest.

## COUNT V

### BREACH OF EMPLOYMENT AGREEMENT
### (AGAINST PANARELLO)

41.    Plaintiffs, as and for paragraph 41 of Count V, repeat and reallege paragraphs 8 and 9 of Count I.

42.    On February 21, 2000, Panarello entered into a valid and binding Employment Agreement (the "Panarello Employment Agreement") with GEE. A copy of the Panarello Employment Agreement is attached hereto as Exhibit "B."

8

43.    Upon information and belief, Panarello has breached and continues to breach the Panarello Employment Agreement by, among other things:

    (a)    misappropriating and using for her own financial gain GEE's confidential and/or proprietary information and trade secrets; and/or

    (b)    making and using for her own financial gain copies of software and/or data stored on GEE's computers.

44.    As a direct and proximate result of Panarello's conduct, GEE has suffered, and will continue to suffer, damages in excess of $100,000.

45.    GEE has no adequate remedy at law. Money damages alone will not, and cannot, compensate it for the loss of goodwill and business opportunities that they have suffered and will continue to suffer as a result of Panarello's actions. Those actions have and will in the future continue to harm GEE's business relationships.

46.    Should the Court grant interlocutory injunctive relief, the burden on the Panarello to refrain from using information and data obtained in violation of the Panarello Employment Agreement will be slight compared to the injury to GEE if relief is not granted. No injury will result to Panarello from an order requiring that she conform her actions to the law.

47.    The granting of an injunction will not disserve the public interest. Indeed, the granting of injunctive relief here will further the public interest.

## COUNT VI
## CIVIL CONSPIRACY

48.    Plaintiffs, as and for paragraph 48 of Count VI, hereby repeat and reallege paragraphs 8 through 47 of Counts I through V.

9

RIL - 0259

49.   Upon information and belief, during their employment with plaintiffs, defendants entered into an agreement to:

    (a)   breach their duties of loyalty to defendants;

    (b)   tortiously interfere with plaintiffs' prospective business advantage;

    (c)   misappropriate trade secrets in violation of the Illinois Trade Secrets Act; and/or

    (d)   breach their respective employment agreements.

50.   As a direct and proximate result of defendants' conduct, plaintiffs have suffered, and will continue to suffer, damages in excess of $100,000.

**WHEREFORE,** Plaintiffs respectfully request that the Court grant the following relief against defendants:

A.   Entry of a preliminary and permanent injunction against defendants and all persons in active concert with them enjoining and restraining them from intentionally and unjustifiably interfering with plaintiffs' relationships with its employees and prospective and existing customers and/or from using trade secrets or confidential information acquired in breach of their duty of loyalty and/or their employment agreements or in violation of the Illinois Trade Secrets Act;

B.   Entry of a preliminary and permanent injunction against the defendants and all persons in active concert with them enjoining and restraining them from withdrawing, transferring, destroying or disposing of any books, records, or accounts of any property, whether real, electronic, personal or mixed;

10

RIL - 0260

C.     Entry of a preliminary and permanent injunction against the defendants and all persons in active concert with them directing that they turn over to plaintiffs all materials obtained in breach of their duty of loyalty and/or their employment agreements or in violation of the Illinois Trade Secrets Act, as well as all copies thereof;

D.     Entry of judgment against defendants for compensatory damages in an amount to be proven at trial but which is not less than $100,000;

E.     Entry of judgment requiring that defendants disgorge salaries that plaintiffs paid to them during the period in which they were breaching their duty of loyalty;

F.     An award of punitive damages in an amount to be proven at trial;

G.     An award of attorneys' fees and costs; and

H.     An order awarding such further relief as the Court deems just and proper.

11

RIL - 0261

MAY-29-2004 03:41 AM                                                    P.06
05/28/2004 14:08 FAX 3122514610        FIGLIULO & SILVERMAN                    ☒013

Respectfully submitted,

By: _____
One of the Attorneys for Plaintiffs

Michael S. Loeffler
Julie L. Trester
Jennifer M. McMahon
Meckler Bulger & Tilson
123 N. Wacker Drive
Suite 1800
Chicago, IL 60606
(312) 474-7900 (office)
(312) 474-7898 (fax)

N:\1931\pleading\final.complaint.doc

12

RIL - 0262

EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LISA RILEY, LISA MARIE CATALANO,
SANDY PANARELLO and
AMANDA MEDINA,
         Plaintiffs

v.
                                        Civil Action No. 04-12318-RWZ

GENERAL EMPLOYMENT
ENTERPRISES, TRIAD PERSONNEL
SERVICES INC, GREGRORY CHRISOS,
HERBERT IMHOFF and KIM CULLEN,
         Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## **AFFIDAVIT OF ELIZABETH A. RODGERS**

       I, Elizabeth A. Rodgers, am an adult of sound mind and am stating the following on my personal knowledge:

1. I am an attorney with a place of business at 18 Tremont Street Boston, MA 02108.
2. I represent the Plaintiffs in the above-captioned matter.
3. On or around May 29, 2004, I received a copy of a complaint, filed in United States District Court for the District of Northern Illinois, by General Employment Enterprises and TRIAD Personnel Services against my clients, Lisa Riley and Sandy Panarello.
4. My clients were notified of the existence of the complaint by the Illinois law firm of Figliulo & Silverman.
5. When I spoke with an attorney at Figliulo & Silverman, he explained that the firm often screened federal court filings for claims naming defendants living out-of-state who might be interested in retaining local counsel.
6. When I asked the representative at Figliulo & Silverman if their firm had ever represented GEE or TRIAD, he replied that they had, on a number of occasions and on different matters, represented those companies.
7. My clients declined Figliulo & Silverman's offer to represent them.
8. Before the complaint was served on either of my clients, it was withdrawn.

Signed under the pains and penalties of perjury, this _24th_ day of October, 2005,

                                                                       Elizabeth A. Rodgers